Appeal by defendant from a judgment for plaintiff in an action based upon fraud. We reverse and remand. *Page 1043 
Plaintiff, Grady Glover, purchased a Trojan frontend loader tractor, model 304-A, from defendant on October 31, 1979. Plaintiff dealt exclusively with William Banonse, defendant's sales manager. The loader had been newly painted, and, according to plaintiff, he was told that the engine had been "majored" (completely overhauled). The engine "missed" upon being started, whereupon, plaintiff asserted, he was told it would be "majored" again. In discussing the purchase, Glover maintained, he was informed that the loader was a 1969 model, for which parts would be readily available; thus, he said, he believed he was buying a ten-year-old machine.
On the day following delivery of the loader, plaintiff began having problems with the engine and other parts as well, necessitating numerous repairs. Some of these expenses were paid for by plaintiff, while others were done by defendant at no cost to him. Ultimately, plaintiff initiated this action, alleging fraud in three counts: Count One alleged false representations knowingly made, that the machine was a 1969 model when in fact it was a 1964 model, and reliance by plaintiff; Count Two alleged that these representations were false and recklessly made, and relied upon; and Count Three alleged that these representations were false, were made by mistake with intent that plaintiff rely on them, and were relied upon.
The defendant's answer denied the allegations of the complaint, and counterclaimed for the sum of $2,524.72 for work and labor done, equipment rental, parts, materials, and interest. The case was tried to a jury, which returned a verdict awarding plaintiff $20,000.00 compensatory damages and $10,000.00 punitive damages; ordering the return of the loader to defendant; and awarding the defendant $2,500.00 on its counterclaim.
The defendant presents several issues for our review. The first issue deals with an evidentiary question. On this first issue, defendant contends that the trial court erred in allowing plaintiff Glover's testimony establishing the model year of the loader without requiring a proper predicate to overcome defendant's hearsay objection.
The record of the actual testimony follows:
 "Q. (MR. WESTBERRY): Mr. Glover, have you discovered the true model year of that tractor?
"A. Yes, I have.
"Q. What is the model year, as you understand it?
 "MR. GARRETT: I object to that, Your Honor. The proper predicate hasn't been laid.
 "THE COURT: If he knows of his own knowledge what the model year is? I overrule the objection if he knows of his own knowledge.
"MR. GARRETT: Model year?
"THE COURT: What the model year of the tractor is.
 "(Plaintiff's Exhibit 13 was marked for identification.)
 "Q. (MR. WESTBERRY): I'll ask you if you know from your own knowledge what the model year of this tractor is?
"A. It was built in 1963. It was sold in '64.
"Q. How did you discover that?
"A. From the factory.
"Q. All right.
 "MR. GARRETT: Your Honor, I am going to object to that. That's hearsay evidence.
"A. I got a photostatic copy of the —
"MR. WESTBERRY. Wait.
 "MR. GARRETT: It's hearsay evidence, Your Honor. He doesn't know when that tractor was sold.
"THE COURT: And he was informed by the —
 "MR. WESTBERRY: Judge, we are not offering the statement for the truth of the matter but simply how Mr. Glover became aware of the information.
 "MR. GARRETT: He doesn't know that, Your Honor. He can't testify to that.
 "MR. PRICE: Your Honor, the serial numbers will appear on the bill of sale furnished us by Atmore Farm and Power. And they also appear on the document *Page 1044 
that Mr. Glover requested and received from Trojan Tractor. And that makes it a question of fact for this jury.
 "THE COURT: I think it does. I overrule the objection.
 "MR. GARRETT: Your Honor, I take exception to that. I don't think he was present at the time it was made or the time it was sold.
 "Q. (MR. WESTBERRY): Grady, let me show you Plaintiff's Exhibit 13 which appears to be an envelope and some documents attached to it. Did you receive that envelope?
"A. Yes, I did.
"Q. How did you receive it?
"A. From Trojan.
"Q. Through the course of the U.S. Mail?
"A. Right.
"Q. And what is that? What is it?
 "A. It's a photostatic copy of the shipping date and who it was sold to, this Trojan loader.
 "MR. GARRETT: Your Honor, I am going to object. That is not the best evidence.
 "Q. (MR. WESTBERRY): Does the serial number which appears on the bill of sale provided you by Atmore Farm and Power Equipment Company, does that same serial number appear on that shipping statement?
"A. Yes, it does. Right there (pointing).
"Q. How was it that you received that information?
 "A. I called them and asked them how old or what model that tractor was. And they told me. And I asked them if they would send me something stating that that I could have for myself. And they sent me this photostatic copy.
 "Q. Did you have any difficulty contacting the Trojan manufacturer?
"A. None whatsoever.
"Q. Okay.
"(Exhibit handed to defense counsel.)
 "Q. (MR. WESTBERRY): While Mr. Garrett is looking at that, I want you to look at Plaintiff's Exhibit 6, the bill of sale, and if the serial number appears on there would you read it?
"A. 691102.
 "Q. All right. Is this the bill of sale that you received from Mr. Banonse for Atmore Farm and Power?
"A. That's the bill of sale.
"MR. WESTBERRY: May I have the exhibit?
"(Pause).
 "Q. (MR. WESTBERRY): Does that same serial number, Grady, appear on this shipping record? If it does, would you read that off of the information?
"A. 691102.
 "MR. WESTBERRY: Judge, at this time I offer Plaintiff's 13 into evidence.
 "MR. GARRETT: I'm going to object, Your Honor. It's not the best evidence.
"THE COURT: What would be the best evidence?
"MR. GARRETT: Sir?
"THE COURT: What would be the best evidence?
 "MR. GARRETT: The original and the people who made it.
 "THE COURT: That's not an original but did you ever try to get the original?
 "MR. WESTBERRY: No, sir. Grady, obtained this during the course of — on his own means.
"MR. GARRETT: He doesn't know —
 "MR. WESTBERRY: I don't know what the best evidence would be.
"MR. GARRETT: — who is shipping that.
"THE COURT: He called the factory.
 "MR. GARRETT: I understand. But he doesn't know the person that shipped it to him. Doesn't know whether they kept the records.
 "THE COURT: That doesn't matter. The same thing would go in the way of looking at an automobile serial number, Gene. I don't think this violates — I'm going to let it in. I think it should go in."
The defendant argues that the plaintiff's statements establishing the model year were hearsay, because they were based *Page 1045 
upon a photostatic copy of a shipping document requested and received by plaintiff. The purpose of this line of questioning was to establish the model year of the loader. Plaintiff established that model year based upon the conversation he had with a representative of the factory which made the loader and a document sent to him by that representative.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. Gamble, McElroy's Alabama Evidence § 242.01 (3d ed. 1977), quoting Cleary, McCormick on Evidence 584 (1972).
We note that the proponent of the photostatic copy of the shipping document stated that he was not offering it for the truth of the matter contained in it "but simply how Mr. Glover became aware of the information." But it is apparent that Glover himself relied upon this photostatic copy of a purported bill of sale mailed to him from a manufacturer located in New Jersey to establish in evidence the year model of the loader in question. The year model of the loader was a material issue in the plaintiff's case on fraud. Consequently, the photostatic copy was being used for a hearsay purpose, Meriwether v. CrownInvestment Corporation, 289 Ala. 504, 268 So.2d 780 (1972). Had plaintiff, himself, testified to this information as told to him by his New Jersey informant, his statement would have been hearsay. Such a statement does not become competent by being reduced to writing. Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545 (1948). Cf. Kindig v. Rea, 334 So.2d 681
(Ala. 1976). It was incumbent upon plaintiff as proponent of this statement to predicate its admissibility upon an exception to the rule against hearsay, which was not done.
In the circumstances presented here, it is clear that the defendant's objection was timely made. Plaintiff was asked "if you know from your own knowledge what the model year of this tractor is," and after he had answered, was then asked "How did you discover that?" "From the factory," he replied. It was at that point that defendant was made aware of plaintiff's reliance upon the factory's statement establishing the tractor's model year and immediately made his hearsay objection. As stated in McElroy's Alabama Evidence, § 426.01 (3) at 794, dealing with analogous situations:
 "The question may call for admissible matter, for example, but the witness gives an unresponsive answer containing inadmissible testimony. In such a situation the party against whom it is offered is unable to determine the inadmissibility until after the answer has been given. . . ."
In his brief plaintiff seeks to justify the admission of this evidence in several ways. First, plaintiff asserts that the shipping document was authenticated by the telephonic identification process recognized in Alabama Power Company v.Jones, 212 Ala. 206, 101 So. 898 (1924) (telephone call to place of business; call answered by someone who conversed in context of employment at that business). The authentication of the source, however, would not furnish the credibility of the author of the writing so as to satisfy the hearsay rule.
Plaintiff also argues that this document was admissible under the "collateral writing exception." He cites us to AssociatesCapital Corporation v. Bank of Huntsville, 49 Ala. App. 523,274 So.2d 80 (1973), for the principle that if the original writing is incidental and collateral to the main or a main issue in the case, then proof may be made of its contents without producing it or showing an excuse for non-production. However much that aspect of the parol evidence rule may relate to a proper case, it has no applicability here. The year model of the machine in question was a material issue, not collateral, and plaintiff's reliance upon the factory's written information which he received by mail made his testimony on that subject hearsay, in no way satisfied by introducing a copy of the shipping record. *Page 1046 
Finally, plaintiff maintains that defendant waived any objections to this evidence by later cross-examining plaintiff on the same subject, as follows:
"Q. Did they tell you what year model it was?
"A. Yeah. They said it was a '64.
"Q. But it was made in '63?
"A. Yeah."
A party's cross-examination of a witness, however, about the subject matter of illegal testimony given by that witness on a direct examination, which was received over the party's objection, is not a waiver of the objection. Scarborough v.Blackman, 108 Ala. 656, 18 So. 735 (1895); DeShazo v. Miller,346 So.2d 423 (Ala. 1977); Gamble, McElroy's Alabama Evidence § 426.01 (20) (3d ed. 1977).
Because of the error discussed above, it is necessary to reverse the judgment of the court below and remand this case for a new trial. For that reason, it is unnecessary to discuss other issues raised by defendant.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.